IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BIOCRYST PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| ANNORA PHARMA PRIVATE LIMITED, | ) | |
| HETERO USA, INC., | ) | |
| HETERO LABS LIMITED, and | ) | |
| CAMBER PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff BioCryst Pharmaceuticals, Inc. ("BioCryst"), by its undersigned attorneys, for its Complaint against Annora Pharma Private Limited ("Annora"), Hetero USA, Inc. ("Hetero USA"), Hetero Labs Limited ("Hetero Labs"), and Camber Pharmaceuticals, Inc. ("Camber") (collectively, Annora, Hetero USA, Hetero Labs, and Camber are referred to herein as "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.     This is a civil action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, involving United States Patent Nos. 10,662,160 ("the '160 patent") (attached as Exhibit A), 11,117,867 ("the '867 patent") (attached as Exhibit B), and 11,618,733 ("the '733 patent") (attached as Exhibit C), collectively, "the patents-in-suit".

## THE PARTIES

2.     BioCryst is a corporation organized and existing under the laws of Delaware, having its principal place of business at 4505 Emperor Blvd., Suite 200, Durham, North Carolina 27703.

3.      BioCryst is the owner of New Drug Application ("NDA") No. 214094, which was approved by the U.S. Food and Drug Administration ("FDA") for the manufacture and sale of ORLADEYO® (berotralstat dihydrochloride) capsules, oral, EQ 110 mg base and EQ 150 mg base.

4.      BioCryst is the owner and assignee of the patents-in-suit, which are listed in FDA's publication titled "Approved Drug Products with Therapeutics Equivalence Evaluations" (commonly known as the "Orange Book") as covering ORLADEYO®.

5.      Upon information and belief, Annora is a corporation organized and existing under the laws of India, having a principal place of business at Sy. No. 261, Annaram Village, Gummadidala Mandal, Sangareddy Dist., Telangana State 502 313 India.

6.      Upon information and belief, Annora is the owner of Abbreviated New Drug Application ("ANDA") No. 220116 (the "Annora ANDA") and is seeking final approval of the Annora ANDA to engage in the commercial manufacture, use, offer for sale, sale, and/or distribution in, and/or importation into, the United States, including the State of Delaware, of berotralstat hydrochloride capsules, oral, EQ 110 mg base and EQ 150 mg base (the "Annora ANDA Products").

7.      Upon information and belief, Hetero USA is a corporation organized and existing under the laws of Delaware, having a principal place of business at 1035 Centennial Avenue, Piscataway, New Jersey 08854.

8.      Upon information and belief, Hetero Labs is a corporation organized and existing under the laws of India, having a principal place of business at 7-2-A2, Hetero Corporate Industrial Estates, Sanath Nagar, Hyderabad 500 018, Andhra Pradesh, India.

9.      Upon information and belief, Camber is a corporation organized and existing under the laws of Delaware, having a principal place of business at 800 Centennial Avenue, Piscataway, New Jersey 08854.

10.     Upon information and belief, Hetero USA, Hetero Labs, and Camber were, are, and will be actively involved in the preparation, submission, maintenance, and further prosecution of the Annora ANDA, together with Annora, and they intend to directly or indirectly benefit from the preparation, submission, maintenance, and further prosecution of the Annora ANDA, such that Hetero USA, Hetero Labs, and Camber may be deemed submitters of the Annora ANDA together with Annora.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

12.     This Court has personal jurisdiction over Hetero USA and Camber because they are Delaware corporations.

13.     This Court has personal jurisdiction over Annora and Hetero Labs under Fed. R. Civ. P. 4(k)(1) and/or Fed. R. Civ. P. 4(k)(2), including because they regularly conduct business in Delaware, and to the extent either of them is not subject to jurisdiction in any state's courts of general jurisdiction, then exercising jurisdiction over them in this action is consistent with the United States Constitution and laws.

14.     Annora sent a letter to BioCryst purportedly pursuant to 21 U.S.C. § 355(j)(2)(B)(ii) and 21 C.F.R. § 314.95(a) dated January 24, 2025 regarding the Annora ANDA and the Annora ANDA Products (the "January 24 Notice Letter").

3

15.     According to the January 24 Notice Letter, Annora filed the Annora ANDA with the FDA seeking approval to engage in the commercial manufacture, use, or sale of the Annora ANDA Products before the expiration of the patents-in-suit.

16.     The January 24 Notice Letter was signed by Somaraju Indukuri, Ph.D., U.S. Agent for Annora, who stated that he is "authorized to accept service of process for any patent infringement complaint that may result from this notification."

17.     Upon information and belief, Somaraju Indukuri, Ph.D., is the U.S. regulatory agent for Annora for filings and communications with the FDA concerning the Annora ANDA.

18.     Upon information and belief, Somaraju Indukuri, Ph.D., acts at the direction of, under the control of, and/or for the benefit of Annora.

19.     The January 24 Notice Letter was shipped with the following return address on the shipping label: Hetero, 3478910617, Hetero USA 1035, 1035 Centennial Ave, Piscataway NJ 08854.

20.     The January 24 Notice Letter includes an Offer for Confidential Access ("OCA") to a redacted version of the Annora ANDA and states that any response to the OCA is to be directed to Somaraju Indukuri, Ph.D. at the address 121 New England Avenue, Piscataway, New Jersey 08854.

21.     After BioCryst responded to Somaraju Indukuri, Ph.D. concerning the OCA, BioCryst received a reply from the Director of Legal, Hetero USA, 1035 Centennial Ave., Piscataway NJ 08854.  Agreement was not reached regarding the OCA.

22.     Upon information and belief, Somaraju Indukuri, Ph.D., is Vice President, Regulatory Affairs, U.S. Agent for Hetero USA.

23.    Upon information and belief, Annora and Hetero USA acted cooperatively in the preparation and submission of the Annora ANDA.

24.    Upon information and belief, Hetero USA has availed itself of Delaware's legal protections in prior litigations, and previously consented to personal jurisdiction in this Judicial District.[1]

25.    Upon information and belief, Hetero Labs is the parent company, directly or indirectly, of Annora and Hetero USA.[2]

26.    Hetero Labs states that it is "a globally renowned, vertically integrated pharmaceutical player engaged in research and development, manufacturing, and marketing of high-quality chemical and biologic medicines across diverse therapeutic areas."[3]

27.    Upon information and belief, Annora develops and manufactures generic pharmaceutical products under the direction of Hetero Labs as part of Hetero Labs' vertically integrated structure.

---

[1]  *See, e.g.*, Answer and Counterclaims at ¶ 51, *AbbVie Inc. v. Hetero USA, Inc. and Hetero Labs Limited, et al.*, C.A. 23-1332 (D. Del. Feb. 18, 2025), D.I. 162 ("Hetero does not contest personal jurisdiction in this judicial district for the purposes of this action"); *id.* at 59 ("Hetero USA, Inc. ('Hetero USA'), Hetero Labs Limited ('Hetero Limited'), and Hetero Labs Limited Unit-V ('Hetero Unit V'), (collectively, Hetero USA, Hetero Limited, and Hetero Unit-V are 'Hetero') . . . Hetero hereby asserts the following Counterclaims against AbbVie . . . .").

[2]  *See, e.g.*, Annora Answer, *Astellas Pharma Inc. v. Cipla Limited et al.*, C.A. 24-1333 (D. Del. Jan. 21, 2025), D.I. 22 ¶ 22 ("Annora admits that Hetero Labs is a parent company of Annora and Hetero USA.")

[3]  Hetero Corporate Brochure at 2, https://www.hetero.com/pdf/Hetero_Corporate-Brochure_6.4.22.pdf (last visited Mar. 10, 2025).

28.     Hetero Labs states that it is "[a]mong the largest producers of Active Pharmaceutical Ingredients (APIs) in the world."[4]

29.     Hetero Labs states that Hetero USA "is the sales and marketing arm of Hetero's Active Pharmaceutical Ingredients (API) and Custom Pharmaceutical Services (CPS) business in USA."[5]

30.     Upon information and belief, Annora uses API supplied by Hetero Labs to develop and manufacture its ANDA Products and prepare its ANDA filings.

31.     The FDA's List of Drug Master Files (DMFs) identifies an active DMF for berotralstat dihydrochloride submitted to the list on September 18, 2024, for which the holder of the DMF is identified as Hetero Labs.[6]

32.     Upon information and belief, the Annora ANDA references and relies on Hetero Labs' DMF for berotralstat dihydrochloride as the API in the Annora ANDA Products. Upon information and belief, Annora will use Hetero Labs berotralstat dihydrochloride in the commercial manufacture of the Annora ANDA Products.

33.     Upon information and belief, Hetero Labs is the parent company, directly or indirectly, of Camber.[7]

---

[4]   Hetero Corporate Brochure at 2, https://www.hetero.com/pdf/Hetero_Corporate-Brochure_6.4.22.pdf (last visited Mar. 10, 2025).

[5] Hetero Website, https://www.hetero.com/presence (last visited March 10, 2025).

[6] FDA, List of Drug Master Files (DMFs), https://www.fda.gov/drugs/drug-master-files-dmfs/list-drug-master-files-dmfs (last visited March 10, 2025) (select the "4Q2024 Excel" hyperlink, and search for "berotralstat" in the Excel file).

[7] See, e.g., Annora and Camber Answer and Counterclaims, Azurity Pharms., Inc. v. Annora Pharma Private Limited and Camber Pharmaceuticals, Inc., C.A. 21-196 (D. Del. Apr. 13, 2022), D.I. 121 ¶ 7 ("Admitted that Annora is a wholly-owned subsidiary of Hetero Labs Limited and that Camber is an indirectly-owned subsidiary of Hetero Labs Limited . . . .").

34.    Hetero Labs describes Camber as "a 100% subsidiary of Hetero" that has "two dedicated formulation manufacturing facilities approved by USFDA, catering to US generic markets and institutional business."[8]

35.    According to Camber, "Hetero [Labs] is one of the world's largest producers of Active Pharmaceutical Ingredients (APIs) and offers over 300 finished dose pharmaceutical products globally."[9]

36.    Upon information and belief, Camber serves as the U.S. sales and marketing division for Hetero Labs.[10]  Hetero Labs states that it "ensur[es] access to various geographies through our marketing arms," expressly naming Camber, to "reach the world" with its companies' products.[11]

37.    Upon information and belief, Camber has availed itself of Delaware's legal protections in prior litigations, and previously consented to personal jurisdiction in this Judicial District.[12]

---

[8] Hetero Website, https://www.hetero.com/presence (last visited March 10, 2025).

[9] Camber Celebrates 15 Years of Success!, Sept. 30, 2022, https://www.camberpharma.com/15-years-success/ (last visited Mar. 10, 2025).

[10] Camber Celebrates 15 Years of Success!, Sept. 30, 2022, https://www.camberpharma.com/15-years-success/ (last visited Mar. 10, 2025) ("Camber Pharmaceuticals was established in 2007 as the sales and marketing entity for Hetero's prescription products in the US market.").

[11] Hetero Corporate Brochure at 4, https://www.hetero.com/pdf/Hetero_Corporate-Brochure_6.4.22.pdf (last visited Mar. 10, 2025).

[12] *See, e.g.*, Annora and Camber Answer and Counterclaims, *Azurity Pharms., Inc. v. Annora Pharma Private Limited and Camber Pharm., Inc.*, C.A. 21-196 (D. Del. Apr. 13, 2022), D.I. 121 ¶ 10 ("Defendants do not contest personal jurisdiction for purposes of this action only."); *id.* at 9 ("Annora Pharma Private Limited ('Annora') and Camber Pharmaceuticals, Inc. ('Camber') (collectively, 'Counterclaim-Plaintiffs'), by way of counterclaim against Azurity Pharmaceuticals, Inc. ('Counterclaim-Defendant'), allege[] as follows . . . .").

38.     Upon information and belief, Defendants are intimately connected and operate as a unitary business.

39.     Upon information and belief, Defendants, directly or indirectly, work in concert to develop, manufacture, import, market, distribute, and/or sell pharmaceutical products, including generic pharmaceutical products pursuant to ANDAs, throughout the United States, including throughout the State of Delaware.

40.     Upon information and belief, Defendants have purposefully availed themselves of the privilege of doing business in the State of Delaware by continuously and systematically placing goods in the stream of commerce for distribution and sale throughout the United States, including throughout the State of Delaware.

41.     Upon information and belief, Defendants, directly or indirectly, derive substantial revenue from the sales of generic pharmaceutical products throughout the United States, including throughout the State of Delaware.

42.     Upon information and belief, Annora collaborates, directly and/or indirectly, with its affiliates Hetero USA, Hetero Labs, and Camber to market and distribute Annora's generic

pharmaceutical products for sale throughout the United States, including throughout the State of Delaware.[13]

43.    Upon information and belief, Annora along with, directly or indirectly, Hetero USA, Hetero Labs, and Camber, acted cooperatively to prepare and submit the Annora ANDA to the FDA.

44.    Upon information and belief, Annora along with, directly or indirectly, Hetero USA, Hetero Labs, and Camber, acted cooperatively to develop the Annora ANDA Products.

45.    Upon information and belief, Annora along with, directly or indirectly, Hetero USA, Hetero Labs, and Camber, will act cooperatively in the maintenance and further prosecution of the Annora ANDA.

––––––––––––––––––

[13] *See, e.g.*, CareEdge Ratings, Annora Pharma Private Limited at 2, Feb. 15, 2024, https://www.careratings.com/upload/CompanyFiles/PR/202402130244_Annora_Pharma_Private_Limited.pdf (last visited Mar. 10, 2025) (explaining that Annora (APPL) manufactures generic finished dosages for therapeutic segments, and as a subsidiary of Hetero Labs (HLL), with operational and managerial support, Annora's products are mostly sold by selling products to Hetero Labs and Camber (CPI), and Camber sells to wholesale distributors in the United States); Medication Guide, Atomoxetine Capsules at 2, https://www.camberpharma.com/wp-content/uploads/2021/03/2100916-Atomoxetine-Hcl-Cap-Med-Guide-signed.pdf (last visited Mar. 10, 2025) (stating that the product is "Manufactured for:" Camber "By:" Annora, and "Digitally signed by rchigurupati@heterousa.com"); Patient and Caregiver Information, Glycopyrrolate Oral Solution at 2, https://www.camberpharma.com/wp-content/uploads/2022/07/2101470-Glycopyrrolate-Oral-Solution-Leaflet.pdf (last visited Mar. 10, 2025) (stating that the product is "Manufactured for:" Camber "By:" Annora); Medication Guide, Venlafaxine Hydrochloride Extended Release Capsules at 2, https://www.camberpharma.com/wp-content/uploads/2021/03/VENLAFAXINE-HYDROCHLORIDE-ER-Capsules-Medication-Guide.pdf (last visited Mar. 10 2025) (stating that the product is "Manufactured for:" Camber "By:" Annora); Medication Guide, Gabapentin Oral Solution at 2, https://www.camberpharma.com/wp-content/uploads/2024/09/2103662-Gabapentin-OS-MG-250-x-350-mm-New.pdf (last visited Mar. 10, 2025) (stating that the product is "Manufactured for:" Camber "By:" Annora).

46.     Upon information and belief, Annora along with, directly or indirectly, Hetero USA, Hetero Labs, and Camber, will act cooperatively to commercialize the Annora ANDA Products, including in the manufacture, use, offer for sale, and/or sale in, and/or importation into, the United States, of the Annora ANDA Products, including throughout the State of Delaware.

47.     This Court has personal jurisdiction over Annora at least because, upon information and belief: (i) Annora is doing business in the State of Delaware and maintains continuous and systematic contacts with the State of Delaware, including by working in concert with Hetero USA, Hetero Labs, and Camber; (ii) Annora has purposefully directed its activities at residents and corporate entities within the State of Delaware, including by working in concert with Hetero USA, Hetero Labs, and Camber; (iii) Annora is in the business of developing and manufacturing generic pharmaceutical products for importation, sale, and/or distribution in the State of Delaware, including by working in concert with Hetero USA, Hetero Labs, and Camber; (iv) Annora has committed, induced, and/or contributed to acts of patent infringement in the State of Delaware, including by working in concert with Hetero USA, Hetero Labs, and Camber; (v) the claims set forth herein against Annora arise out of or relate to those activities ((i) – (iv), above); (vi) it is reasonable and fair for this Court to exercise personal jurisdiction over Annora; and (vii) Annora has availed itself of Delaware's legal protections in prior litigations, and previously consented to personal jurisdiction in this Judicial District.[14]

---

[14] *See* Annora and Camber Answer and Counterclaims, *Azurity Pharm., Inc. v. Annora Pharma Private Limited and Camber Pharm., Inc.*, C.A. 21-196 (D. Del. Apr. 13, 2022), D.I. 121 ¶ 10 ("Defendants do not contest personal jurisdiction for purposes of this action only."); *id.* at 9 ("Annora Pharma Private Limited ('Annora') and Camber Pharmaceuticals, Inc. ('Camber') (collectively, 'Counterclaim-Plaintiffs'), by way of counterclaim against Azurity Pharmaceuticals, Inc. ('Counterclaim-Defendant'), allege[] as follows . . . .").

48.     This Court has personal jurisdiction over Hetero USA at least because Hetero USA is a corporation organized and existing under the laws of Delaware.

49.     This Court has personal jurisdiction over Hetero Labs at least because, upon information and belief: (i) Hetero Labs is doing business in the State of Delaware and maintains continuous and systematic contacts with the State of Delaware, including by working in concert with Annora, Hetero USA, and Camber;  (ii) Hetero Labs has purposefully directed its activities at residents and corporate entities within the State of Delaware, including by working in concert with Annora, Hetero USA, and Camber; (iii) Hetero Labs is in the business of developing and manufacturing generic pharmaceutical products for importation, sale, and/or distribution in the State of Delaware, including by working in concert with Annora, Hetero USA, and Camber; (iv) Hetero Labs has committed, induced, and/or contributed to acts of patent infringement in the State of Delaware, including by working in concert with Annora, Hetero USA, and Camber; (v) the claims set forth herein against Hetero Labs arise out of or relate to those activities ((i) - (iv) above); (vi) it is reasonable and fair for this Court to exercise personal jurisdiction over Hetero Labs; and (vii) Hetero Labs has availed itself of Delaware's legal protections in prior litigations, and previously consented to personal jurisdiction in this Judicial District.[15]

50.     This Court has personal jurisdiction over Camber at least because Camber is a corporation organized and existing under the laws of Delaware.

51.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) and/or § 1400(b).

---

[15] *See, e.g.*, Answer and Counterclaims at ¶ 51, *AbbVie Inc. v. Hetero USA, Inc. and Hetero Labs Limited, et al.*, C.A. 23-1332 (D. Del. Feb. 18, 2025), D.I. 162 ("Hetero does not contest personal jurisdiction in this judicial district for the purposes of this action"); *id.* at 59 ("Hetero USA, Inc. ('Hetero USA'), Hetero Labs Limited ('Hetero Limited'), and Hetero Labs Limited Unit-V ('Hetero Unit V'), (collectively, Hetero USA, Hetero Limited, and Hetero Unit-V are 'Hetero') . . . Hetero hereby asserts the following Counterclaims against AbbVie . . . .").

52.     Venue is proper as to Annora because, upon information and belief, Annora is a foreign corporation and therefore it may be sued in any Judicial District in the United States in which Annora is subject to personal jurisdiction, including in this Judicial District.

53.     Venue is proper as to Hetero USA because Hetero USA is incorporated in the State of Delaware.

54.     Venue is proper as to Hetero Labs because, upon information and belief, Hetero Labs is a foreign corporation and therefore it may be sued in any Judicial District in the United States in which Hetero Labs is subject to personal jurisdiction, including in this Judicial District.

55.     Venue is proper as to Camber because Camber is incorporated in the State of Delaware.

## FACTS AS TO ALL COUNTS

56.     BioCryst's ORLADEYO® is sold and marketed under NDA No. 214094, which was approved by the FDA on December 3, 2020, for the manufacture and sale of berotralstat dihydrochloride capsules, oral, EQ 110 mg base and EQ 150 mg base.

57.     ORLADEYO® is a plasma kallikrein inhibitor indicated for prophylaxis to prevent attacks of hereditary angioedema ("HAE") in adults and pediatric patients 12 years and older.

58.     The recommended dosage for ORLADEYO® is one 150 mg capsule taken orally once daily with food.  No dosage adjustment is recommended for patients with mild hepatic impairment (Child-Pugh Class A); in patients with moderate or severe hepatic impairment (Child-Pugh B or C), the recommended dosage is one 110 mg capsule taken orally once daily with food. In some cases, gastrointestinal (GI) reactions may occur in patients receiving ORLADEYO®, and if GI events persist, a reduced dose of 110 mg once daily with food may be considered.

59. The FDA granted ORLADEYO® New Chemical Entity ("NCE") exclusivity, which according to the FDA's Orange Book, does not expire until December 3, 2025.

60. The FDA granted ORLADEYO® Orphan Drug Exclusivity ("ODE"), which according to the FDA's Orange Book, does not expire until December 3, 2027.

61. FDA's Orange Book lists nine (9) patents as covering ORLADEYO®, three (3) of which are the patents-in-suit. The other six (6) patents listed in FDA's Orange Book as covering ORLADEYO® are: U.S. Patent Nos. 10,125,102 ("the '102 patent"); 10,329,260 ("the '260 patent"); 10,689,346 ("the '9346 patent"); 11,230,530 ("the '530 patent"); 11,708,333 ("the '333 patent"); and 12,116,346 ("the '6346 patent"). The FDA's Orange Book lists the "Patent Expiration" for the '102 patent as April 7, 2035 and for the '260 patent, the '9346 patent, the '530 patent, the '333 patent, and the '6346 patent as March 9, 2035.

62. The January 24 Notice Letter indicates that the Annora ANDA contains Paragraph IV certifications only to the three (3) patents-in-suit. The January 24 Notice Letter is silent as to the '102 patent, the '260 patent, the '9346 patent, the '530 patent, the '333 patent, and the '6346 patent.

63. The '160 patent, titled "Crystalline Salts of a Plasma Kallikrein Inhibitor," was duly and legally issued by the United States Patent and Trademark Office on May 26, 2020, to BioCryst, upon assignment from inventors Yahya El-Kattan and Yarlagadda S. Babu. BioCryst owns all rights, title, and interest in and to the '160 patent. The Orange Book lists the "Patent Expiration" for the '160 patent as November 1, 2039.

64. The '867 patent, titled "Crystalline Salts of a Plasma Kallikrein Inhibitor," was duly and legally issued by the United States Patent and Trademark Office on September 14, 2021, to BioCryst, upon assignment from inventors Yahya El-Kattan and Yarlagadda S. Babu. BioCryst

owns all rights, title, and interest in and to the '867 patent. The Orange Book lists the "Patent Expiration" for the '867 patent as November 1, 2039.

65.    The '733 patent, titled "Crystalline Salts of a Plasma Kallikrein Inhibitor," was duly and legally issued by the United States Patent and Trademark Office on April 4, 2023, to BioCryst, upon assignment from inventors Yahya El-Kattan and Yarlagadda S. Babu. BioCryst owns all rights, title, and interest in and to the '733 patent. The Orange Book lists the "Patent Expiration" for '733 patent as November 1, 2039.

66.    Upon information and belief, the reference listed drug for the Annora ANDA and the Annora ANDA Products is ORLADEYO® (berotralstat dihydrochloride capsules; oral), EQ 110 mg base and EQ 150 mg base.

67.    Upon information and belief, the Annora ANDA Products are berotralstat hydrochloride capsules, oral, EQ 110 mg base and EQ 150 mg base.

68.    Upon information and belief, Defendants will market the Annora ANDA Products with labeling that substantially copies the FDA-approved label for ORLADEYO®.

69.    Upon information and belief, the proposed prescribing information for the Annora ANDA Products includes a header titled "Indications and Usage" and states that the Annora ANDA Products are a plasma kallikrein inhibitor indicated for prophylaxis to prevent attacks of hereditary angioedema (HAE) in adults and pediatric patients 12 years of age and older.

70.    Upon information and belief, the proposed prescribing information for the Annora ANDA Products includes a header titled "Dosage and Administration" and states that the recommended dosage is: (i) one 150 mg capsule taken orally once daily with food. Upon information and belief, the proposed prescribing information for the Annora ANDA Products includes a header titled "Dosage and Administration" that further states that in patients with

moderate or severe hepatic impairment (Child-Pugh B or C), the recommended dosage is one 110 mg capsule taken orally once daily with food.  Upon information and belief, the proposed prescribing information for the Annora ANDA Products includes a header titled "Dosage and Administration" that further states that gastrointestinal (GI) reactions may occur in patients receiving berotralstat hydrochloride, and if GI events persist, a reduced dose of 110 mg once daily with food may be considered.

71.     21 U.S.C. § 355(j)(2)(B)(iv)(II) requires that a letter notifying a patent holder of the filing of an ANDA containing a paragraph IV certification (i.e., "Notice Letter") "include a detailed statement of the factual and legal basis of the opinion of the applicant that the patent is invalid or will not be infringed."  Likewise, 21 C.F.R. § 314.95(c)(7) requires that such a letter include "[a] detailed statement of the factual and legal basis of the applicant's opinion that the patent is not valid, unenforceable, or will not be infringed."  The detailed statement must include "(i) [f]or each claim of a patent alleged not to be infringed, a full and detailed explanation of why the claim is not infringed" and "(ii) [f]or each claim of a patent alleged to be invalid or unenforceable, a full and detailed explanation of the grounds supporting the allegation." 21 C.F.R. § 314.95(c)(7)(i)(ii).

72.     Upon information and belief, as of the date of the January 24 Notice Letter Defendants were aware of the statutory provisions and regulations set out in 21 U.S.C. § 355(j)(2)(B)(iv)(II) and 21 C.F.R. § 314.95(c)(7).

73.     The January 24 Notice Letter does not disclose any noninfringement contentions or opinions directed to the '160 patent claims 1-28, the '867 patent claims 1-20, and the '733 patent claims 1-16.

74. The January 24 Notice Letter does not disclose any unenforceability contentions or opinions directed to the '160 patent claims 1-28, the '867 patent claims 1-20, and the '733 patent claims 1-16.

## FIRST COUNT
### (Defendants' Infringement of the '160 Patent)

75. BioCryst repeats and re-alleges each of the foregoing Paragraphs as if fully set forth herein.

76. Upon information and belief, Annora, together with, at the direction of, under the control of, and due to the inducement/encouragement of Hetero USA, Hetero Labs, and/or Camber, submitted the Annora ANDA to FDA pursuant to 21 U.S.C. § 355(j) for the purpose of seeking FDA approval to market the Annora ANDA Products prior to the expiration of the '160 patent.

77. Upon information and belief, Hetero USA, Hetero Labs, and/or Camber provided, are providing, and will provide material and significant support, advice, aid, instruction, inducement, and encouragement to Annora in the preparation, filing, maintenance, and further prosecution of the Annora ANDA.

78. Upon information and belief, Hetero USA, Hetero Labs, and/or Camber are jointly and severally liable for Annora's infringement of one or more claims of the '160 patent.

79. Upon information and belief, Annora, together with, at the direction of, under the control of, and due to the inducement/encouragement of Hetero USA Hetero Labs, and/or Camber, submitted the Annora ANDA with a paragraph IV certification to the '160 patent for the purpose of obtaining FDA approval to engage in the commercial manufacture, use, sale, offering for sale, and/or importation of the Annora ANDA Products before the expiration of the '160 patent.

80.    Upon information and belief, as of the January 24 Notice Letter, Defendants were aware of the statutory provisions and regulations in 21 U.S.C. § 355(j)(2)(B)(iv)(II) and 21 C.F.R. § 314.95(c)(7).

81.    Upon information and belief, Annora, together with, at the direction of, under the control of, and due to the inducement/encouragement of Hetero USA, Hetero Labs, and/or Camber, sent the January 24 Notice Letter to BioCryst, purportedly pursuant to 21 U.S.C. § 355(j)(2)(B) and 21 C.F.R. § 314.95.

82.    Upon information and belief, Defendants' submission of the Annora ANDA with a paragraph IV certification to the '160 patent to obtain approval to engage in the commercial manufacture, use, or sale in the United States, and/or import into the United States, of the Annora ANDA Products before the expiration of the '160 patent is an act of infringement of one or more claims of the '160 patent by Defendants under 35 U.S.C. § 271(e)(2)(A), including but not limited to claim 1 of the '160 patent.

83.    Upon information and belief, Defendants will commercially manufacture, use, offer to sell, and/or sell within the United States, and/or import into the United States, the Annora ANDA Products upon, or in anticipation of, FDA final approval of the Annora ANDA.

84.    Upon information and belief, Defendants' commercial manufacture, use, offer for sale, and/or sale within the United States, and/or importation into the United States, of the Annora ANDA Products will infringe, directly and/or indirectly, one or more claims of the '160 patent under 35 U.S.C. § 271(a), 35 U.S.C. § 271(b), and/or 35 U.S.C. § 271(c), including but not limited to claim 1 of the '160 patent.

85.    Upon information and belief, the commercial manufacture, use, offer to sell, or sale within the United States, and/or importation into the United States, of the Annora ANDA Products

17

prior to the expiration of the '160 patent will directly infringe the '160 patent under 35 U.S.C. § 271(a), will actively induce another's infringement of the '160 patent under 35 U.S.C. § 271(b), and will constitute contributory infringement of the '160 patent under 35 U.S.C. § 271(c).

86.    Upon information and belief, the Annora ANDA Products will be marketed with labeling that substantially copies the labeling for ORLADEYO®.

87.    Upon information and belief, the label for the Annora ANDA Products that will be made available to third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists) upon FDA approval of Annora's ANDA will encourage such third parties to perform one or more of the methods claimed in the '160 patent.

88.    Upon information and belief, the use of Annora's ANDA Products by third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists) according to the instructions on the label of Annora's ANDA Products will constitute an act of direct infringement of one or more of the methods claimed in the '160 patent.

89.    Upon information and belief, by making, using, selling, offering for sale, and/or importing into the United States Annora's ANDA Products and/or distributing the corresponding labeling, package insert, and/or medication guide, Defendants will knowingly encourage, advise, instruct, urge, aid, and otherwise induce third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists), to make, use, sell, offer for sale, and/or import into the United States products that infringe the claims, or the making or use of which infringes the claims of the '160 patent.

90. Upon information and belief, Defendants intend such infringement by third parties, as Defendants are in the business of developing, manufacturing, marketing, selling, and distributing generic pharmaceutical products throughout the United States. Upon information and belief, Defendants know that their actions will induce acts that constitute direct infringement of claims of the '160 patent by, e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists.

91. Upon information and belief, by offering for sale or selling within the United States or importing into the United States Annora's ANDA Products and/or distributing the corresponding labeling, package insert, and/or medication guide, Defendants will contribute to the infringement of the '160 patent by third parties because: (i) Annora's ANDA Products constitute a material part of the methods of treatment claimed in the '160 patent; (ii) Defendants know or should know that Annora's ANDA Products will be made for uses that directly infringe the methods of treatment claimed in the '160 patent; and (iii) Annora's ANDA Products are not a staple article or commodity of commerce suitable for substantial noninfringing uses.

92. Upon information and belief, Defendants have acted with full knowledge of the '160 patent and its claims and without a reasonable basis for believing that Defendants would not be liable for infringement of the '160 patent. Defendants knew of the existence of the '160 patent, as evidenced by Defendants' filing of the Annora ANDA with a paragraph IV certification specifically referencing the '160 patent. Notwithstanding this knowledge, Defendants have continued to signal their intent to engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of the Annora ANDA Products before the expiration of the '160 patent. Upon information and belief, through such activities, Defendants specifically intend infringement of the '160 patent.

93.     Upon information and belief, the actions described in this Complaint relating to the Annora ANDA and Annora's ANDA Products were done by and for the benefit of Defendants.

94.     Upon information and belief, the factual and legal bases in the January 24 Notice Letter regarding the '160 patent do not establish good-faith bases to comply with the statutory provisions and regulations set out in 21 U.S.C. § 355(j)(2)(B)(iv)(II) and 21 C.F.R. § 314.95(c)(7).

95.     Defendants acted without a reasonable basis for believing that they would not be liable for infringement of the '160 patent, thus rendering this case "exceptional" and entitling BioCryst to an award of reasonable attorneys' fees under 35 U.S.C. § 285.

96.     The acts of infringement set forth above will cause BioCryst irreparable harm for which there is no adequate remedy at law, unless Defendants are preliminarily and permanently enjoined by this Court.

## SECOND COUNT
### (Defendants' Infringement of the '867 Patent)

97.     BioCryst repeats and re-alleges each of the foregoing Paragraphs as if fully set forth herein.

98.     Upon information and belief, Annora, together with, at the direction of, under the control of, and due to the inducement/encouragement of Hetero USA, Hetero Labs, and/or Camber, submitted the Annora ANDA to FDA pursuant to 21 U.S.C. § 355(j) for the purpose of seeking FDA approval to market the Annora ANDA Products prior to the expiration of the '867 patent.

99.     Upon information and belief, Hetero USA, Hetero Labs, and/or Camber provided, are providing, and will provide material and significant support, advice, aid, instruction, inducement, and encouragement to Annora in the preparation, filing, maintenance, and further prosecution of the Annora ANDA.

100.    Upon information and belief, Hetero USA, Hetero Labs, and/or Camber are jointly and severally liable for Annora's infringement of one or more claims of the '867 patent.

101.    Upon information and belief, Annora, together with, at the direction of, under the control of, and due to the inducement/encouragement of Hetero USA, Hetero Labs, and/or Camber, submitted the Annora ANDA with a paragraph IV certification to the '867 patent for the purpose of obtaining FDA approval to engage in the commercial manufacture, use, sale, offering for sale, and/or importation of the Annora ANDA Products before the expiration of the '867 patent.

102.    Upon information and belief, as of the January 24 Notice Letter, Defendants were aware of the statutory provisions and regulations in 21 U.S.C. § 355(j)(2)(B)(iv)(II) and 21 C.F.R. § 314.95(c)(7).

103.    Upon information and belief, Annora, together with, at the direction of, under the control of, and due to the inducement/encouragement of Hetero USA, Hetero Labs, and/or Camber, sent the January 24 Notice Letter to BioCryst, purportedly pursuant to 21 U.S.C. § 355(j)(2)(B) and 21 C.F.R. § 314.95.

104.    Upon information and belief, Defendants' submission of the Annora ANDA with a paragraph IV certification to the '867 patent to obtain approval to engage in the commercial manufacture, use, or sale in, the United States, and/or importation into the United States, of the Annora ANDA Products before the expiration of the '867 patent is an act of infringement of one or more claims of the '867 patent by Defendants under 35 U.S.C. § 271(e)(2)(A), including but not limited to claim 1 of the '867 patent.

105.    Upon information and belief, Defendants will commercially manufacture, use, offer to sell, and/or sell within the United States, and/or import into the United States, the Annora ANDA Products upon, or in anticipation of, final FDA approval of the Annora ANDA.

21

106. Upon information and belief, Defendants' commercial manufacture, use, offer for sale, and/or sale within the United States, and/or importation into the United States, of the Annora ANDA Products will infringe, directly and/or indirectly, one or more claims of the '867 patent under 35 U.S.C. § 271(a), 35 U.S.C. § 271(b), and/or 35 U.S.C. § 271(c), including but not limited to claim 1 of the '867 patent.

107. Upon information and belief, the commercial manufacture, use, offer to sell, or sale within the United States, and/or importation into the United States, of the Annora ANDA Products prior to the expiration of the '867 patent will directly infringe the '867 patent under 35 U.S.C. § 271(a), will actively induce another's infringement of the '867 patent under 35 U.S.C. § 271(b), and will constitute contributory infringement of the '867 patent under 35 U.S.C. § 271(c).

108. Upon information and belief, the Annora ANDA Products will be marketed with labeling that substantially copies the labeling for ORLADEYO®.

109. Upon information and belief, the label for the Annora ANDA Products that will be made available to third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists) upon FDA approval of Annora's ANDA will encourage such third parties to perform one or more of the methods claimed in the '867 patent.

110. Upon information and belief, the use of Annora's ANDA Products by third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists) according to the instructions on the label of Annora's ANDA Products will constitute an act of direct infringement of one or more of the methods claimed in the '867 patent.

111.    Upon information and belief, by making, using, selling, offering for sale, and/or importing into the United States Annora's ANDA Products and/or distributing the corresponding labeling, package insert, and/or medication guide, Defendants will knowingly encourage, advise, instruct, urge, aid, and otherwise induce third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists), to make, use, sell, offer for sale, and/or import into the United States products that infringe the claims, or the making or use of which infringes the claims, of the '867 patent.

112.    Upon information and belief, Defendants intend such infringement by third parties, as Defendants are in the business of developing, manufacturing, marketing, selling, and distributing generic pharmaceutical products throughout the United States. Upon information and belief, Defendants know that their actions will induce acts that constitute direct infringement of claims of the '867 patent by, e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists.

113.    Upon information and belief, by offering for sale or selling within the United States or importing into the United States Annora's ANDA Products and/or distributing the corresponding labeling, package insert, and/or medication guide, Defendants will contribute to the infringement of the '867 patent by third parties because: (i) Annora's ANDA Products constitute a material part of the methods of treatment claimed in the '867 patent; (ii) Defendants know or should know that Annora's ANDA Products will be made for uses that directly infringe the methods of treatment claimed in the '867 patent; and (iii) Annora's ANDA Products are not a staple article or commodity of commerce suitable for substantial noninfringing uses.

114.    Upon information and belief, Defendants have acted with full knowledge of the '867 patent and its claims and without a reasonable basis for believing that Defendants would not

be liable for infringement of the '867 patent. Defendants knew of the existence of the '867 patent, as evidenced by Defendants' filing of the Annora ANDA with a paragraph IV certification specifically referencing the '867 patent. Notwithstanding this knowledge, Defendants have continued to signal their intent to engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of the Annora ANDA Products before the expiration of the '867 patent. Upon information and belief, through such activities, Defendants specifically intend infringement of the '867 patent.

115.    Upon information and belief, the actions described in this Complaint relating to the Annora ANDA and Annora's ANDA Products were done by and for the benefit of Defendants.

116.    Upon information and belief, the factual and legal bases in the January 24 Notice Letter regarding the '867 patent do not establish good-faith bases to comply with the statutory provisions and regulations set out in 21 U.S.C. § 355(j)(2)(B)(iv)(II) and 21 C.F.R. § 314.95(c)(7).

117.    Defendants acted without a reasonable basis for believing that they would not be liable for infringement of the '867 patent, thus rendering this case "exceptional" and entitling BioCryst to an award of reasonable attorneys' fees under 35 U.S.C. § 285.

118.    The acts of infringement set forth above will cause BioCryst irreparable harm for which there is no adequate remedy at law, unless Defendants are preliminarily and permanently enjoined by this Court.

**THIRD COUNT**
**(Defendants' Infringement of the '733 Patent)**

119.    BioCryst repeats and re-alleges each of the foregoing Paragraphs as if fully set forth herein.

120.    Upon information and belief, Annora, together with, at the direction of, under the control of, and due to the inducement/encouragement of Hetero USA, Hetero Labs, and/or Camber,

24

submitted the Annora ANDA to FDA pursuant to 21 U.S.C. § 355(j) for the purpose of seeking FDA approval to market the Annora ANDA Products prior to the expiration of the '733 patent.

121.    Upon information and belief, Hetero USA, Hetero Labs, and/or Camber provided, are providing, and will provide material and significant support, advice, aid, instruction, inducement, and encouragement to Annora in the preparation, filing, maintenance, and further prosecution of the Annora ANDA.

122.    Upon information and belief, Hetero USA, Hetero Labs, and/or Camber are jointly and severally liable for Annora's infringement of one or more claims of the '733 patent.

123.    Upon information and belief, Annora, together with, at the direction of, under the control of, and due to the inducement/encouragement of Hetero USA, Hetero Labs, and/or Camber, submitted the Annora ANDA with a paragraph IV certification to the '733 patent for the purpose of obtaining FDA approval to engage in the commercial manufacture, use, sale, offering for sale, and/or importation of the Annora ANDA Products before the expiration of the '733 patent.

124.    Upon information and belief, as of the January 24 Notice Letter, Defendants were aware of the statutory provisions and regulations in 21 U.S.C. § 355(j)(2)(B)(iv)(II) and 21 C.F.R. § 314.95(c)(7).

125.    Upon information and belief, Annora, together with, at the direction of, under the control of, and due to the inducement/encouragement of Hetero USA, Hetero Labs, and/or Camber, sent the January 24 Notice Letter to BioCryst, purportedly pursuant to 21 U.S.C. § 355(j)(2)(B) and 21 C.F.R. § 314.95.

126.    Upon information and belief, Defendants' submission of the Annora ANDA with a paragraph IV certification to the '733 patent to obtain approval to engage in the commercial manufacture, use, offer for sale, or sale in the United States, and/or importation into the United

States, of the Annora ANDA Products before the expiration of the '733 patent is an act of infringement of one or more claims of the '733 patent by Defendants of the '733 patent under 35 U.S.C. § 271(e)(2)(A), including but not limited to claim 1 of the '733 patent.

127.    Upon information and belief, Defendants will commercially manufacture, use, offer to sell, and/or sell within the United States, and/or import into the United States, the Annora ANDA Products upon, or in anticipation of, final FDA approval of the Annora ANDA.

128.    Upon information and belief, Defendants' commercial manufacture, use, offer for sale, and/or sale within the United States, and/or importation into the United States, of the Annora ANDA Products will infringe, directly and/or indirectly, one or more claims of the '733 patent under 35 U.S.C. § 271(a), 35 U.S.C. § 271(b), and/or 35 U.S.C. § 271(c), including but limited to claim 1 of the '733 patent.

129.    Upon information and belief, the commercial manufacture, use, offer to sell, or sale within the United States, and/or importation into the United States of the Annora ANDA Products prior to the expiration of the '733 patent will directly infringe the '733 patent under 35 U.S.C. § 271(a), will actively induce another's infringement of the '733 patent under 35 U.S.C. § 271(b), and will constitute contributory infringement of the '733 patent under 35 U.S.C. § 271(c).

130.    Upon information and belief, the Annora ANDA Products will be marketed with labeling that substantially copies the labeling for ORLADEYO®.

131.    Upon information and belief, the label for the Annora ANDA Products that will be made available to third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists) upon FDA approval of Annora's ANDA will encourage such third parties to perform one or more of the methods claimed in the '733 patent.

132.    Upon information and belief, the use of Annora's ANDA Products by third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists) according to the instructions on the label of Annora's ANDA Products will constitute an act of direct infringement of one or more of the methods claimed in the '733 patent.

133.    Upon information and belief, by making, using, selling, offering for sale, and/or importing into the United States Annora's ANDA Products and/or distributing the corresponding labeling, package insert, and/or medication guide, Defendants will knowingly encourage, advise, instruct, urge, aid, and otherwise induce third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists), to make, use, sell, offer for sale, and/or import into the United States products that infringe the claims, or the making or use of which infringe the claims, of the '733 patent.

134.    Upon information and belief, Defendants intend such infringement by third parties, as Defendants are in the business of developing, manufacturing, marketing, selling, and distributing generic pharmaceutical products throughout the United States. Upon information and belief, Defendants know that their actions will induce acts that constitute direct infringement of claims of the '733 patent by, e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists.

135.    Upon information and belief, by offering for sale or selling within the United States or importing into the United States Annora's ANDA Products and/or distributing the corresponding labeling, package insert, and/or medication guide, Defendants will contribute to the infringement of the '733 patent by third parties because: (i) Annora's ANDA Products constitute a material part of the methods of treatment claimed in the '733 patent; (ii) Defendants know or

should know that Annora's ANDA Products will be made for uses that directly infringe the methods of treatment claimed in the '733 patent; and (iii) Annora's ANDA Products are not a staple article or commodity of commerce suitable for substantial noninfringing uses.

136.    Upon information and belief, Defendants have acted with full knowledge of the '733 patent and its claims and without a reasonable basis for believing that Defendants would not be liable for infringement of the '733 patent. Defendants knew of the existence of the '733 patent, as evidenced by Defendants' filing of the Annora ANDA with a paragraph IV certification specifically referencing the '733 patent. Notwithstanding this knowledge, Defendants have continued to signal their intent to engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of the Annora ANDA Products before the expiration of the '733 patent. Upon information and belief, through such activities, Defendants specifically intend infringement of the '733 patent.

137.    Upon information and belief, the actions described in this Complaint relating to the Annora ANDA and Annora's ANDA Products were done by and for the benefit of Defendants.

138.    Upon information and belief, the factual and legal bases in the January 24 Notice Letter regarding the '733 patent do not establish good-faith bases to comply with the statutory provisions and regulations set out in 21 U.S.C. § 355(j)(2)(B)(iv)(II) and 21 C.F.R. § 314.95(c)(7).

139.    Defendants acted without a reasonable basis for believing that they would not be liable for infringement of the '733 patent, thus rendering this case "exceptional" and entitling BioCryst to an award of reasonable attorneys' fees under 35 U.S.C. § 285.

140.    The acts of infringement set forth above will cause BioCryst irreparable harm for which there is no adequate remedy at law, unless Defendants are preliminarily and permanently enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, BioCryst respectfully requests the following relief:

i.  A Judgment declaring that the patents-in-suit are valid and enforceable;

ii. A Judgment, pursuant to 35 U.S.C. § 271(e)(2)(A), declaring that Defendants infringed the patents-in-suit by submitting to FDA ANDA No. 220116 with a paragraph IV certification for the purpose of obtaining approval for the commercial manufacture, use, offer for sale, and/or sale in, and/or importation into, the United States of the Annora ANDA Products before the expiration of the patents-in-suit (including any regulatory extensions);

iii. A Judgment pursuant to 35 U.S.C. § 271(a), 35 U.S.C. § 271(b), and/or 35 U.S.C. § 271(c), declaring that the commercial manufacture, use, offering to sell, or sale within the United States, and/or importation into the United States of the Annora ANDA Products before the expiration of the patents-in-suit (including any regulatory extensions) would directly and/or indirectly infringe the patents-in-suit;

iv. An Order, pursuant to 35 U.S.C. § 271(e)(4)(A), 35 U.S.C. § 281, and 35 U.S.C. § 283, that the effective date of any final approval of ANDA No. 220116 shall be no earlier than the date on which the last of the patents-in-suit expire (including any regulatory extensions);

v. An Order, pursuant to 35 U.S.C. § 271(e)(4)(B), 35 U.S.C. § 281, and 35 U.S.C. § 283, preliminarily and permanently enjoining Defendants and their officers, agents, servants, employees, attorneys, and any person in active concert or participation or privity with Defendants, from engaging in the commercial manufacture, use, offering to sell, or sale within the United States, and/or importation into the United States of the

Annora ANDA Products until the expiration of the patents-in-suit (including any regulatory extensions);

vi.     A Judgment, pursuant to 35 U.S.C. § 271(e)(4)(C) and 35 U.S.C. § 284, awarding BioCryst damages or other monetary relief if Defendants commercially manufacture, use, offer to sell, or sell within the United States, and/or import into the United States, the Annora ANDA Products prior to the expiration of the patents-in-suit (including any regulatory extensions);

vii.    A Judgment, pursuant to 35 U.S.C. § 271(e)(4)(C) and 35 U.S.C. § 284, awarding BioCryst enhanced damages if Defendants commercially manufacture, use, offer to sell, or sell within the United States, and/or import into the United States the Annora ANDA Products prior to the expiration of the patents-in-suit (including any regulatory extensions);

viii.   A Judgment, pursuant to 35 U.S.C. § 285, declaring that this is an exceptional case and awarding BioCryst its attorneys' fees and costs; and

ix.     Such other and further relief as this Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs*
Karen Jacobs (#2881)
Derek J. Fahnestock (#4705)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
kjacobs@morrisnichols.com
dfahnestock@morrisnichols.com
*Attorneys for Plaintiff*
*BioCryst Pharmaceuticals, Inc.*

OF COUNSEL:

Edgar H. Haug
Sandra Kuzmich, Ph.D.
Richard F. Kurz
HAUG PARTNERS LLP
745 Fifth Avenue
New York, NY 10151
(212) 588-0800

March 10, 2025

30